UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Nicholas R. Zyla,
        Claimant

        v.                                    Civil No. 08-cv-86-SM
                                              Opinion No. 2009 DNH 052
Michael J. Astrue,
Commissioner, Social
Security Administration,
        Respondent

## **O R D E R**

Pursuant to 42 U.S.C. § 405(g), claimant, Nicholas R. Zyla, moves to reverse the Commissioner's decision denying his application for Social Security disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423, and asks the court to remand the case.  The Commissioner, in turn, moves for an order affirming his decision.  For the reasons given below, the decision of the Commissioner is affirmed.

### **Standard of Review**

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.  The findings of the Commissioner of Social Security as to any fact, if

supported by substantial evidence, shall be conclusive
. . .

42 U.S.C. § 405(g).  However, the court "must uphold a denial of
social security disability benefits unless 'the [Commissioner]
has committed a legal or factual error in evaluating a particular
claim.'"  Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir.
1996) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

     As for the statutory requirement that the Commissioner's
findings of fact be supported by substantial evidence, "[t]he
substantial evidence test applies not only to findings of basic
evidentiary facts, but also to inferences and conclusions drawn
from such facts."  Alexandrou v. Sullivan, 764 F. Supp. 916, 917–
18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727, 730
(2d Cir. 1966)).  In turn, "[s]ubstantial evidence is 'more than
[a] mere scintilla.  It means such relevant evidence as a
reasonable mind might accept as adequate to support a
conclusion.'"  Currier v. Sec'y of HEW, 612 F.2d 594, 597 (1st
Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401
(1971)).  Finally, when determining whether a decision of the
Commissioner is supported by substantial evidence, the court must
"review[] the evidence in the record as a whole."  Irlanda Ortiz

v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (quoting

Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).[1]


## Background

The parties have submitted a Joint Statement of Material

Facts (document no. 17).  That statement is part of the court's

record, and will be summarized, rather than repeated in full.


Based on an application filed on April 18, 2003, which is

not at issue, Zyla was awarded disability insurance benefits for

a closed period of disability beginning on August 2, 2002, and

ending on October 31, 2003, when he returned to work.  Claimant

worked until at least April 1, 2004 (Administrative Transcript

("Tr.") at 87), but the parties agree that he had ceased engaging

in substantial gainful activity by January 1 of that year, the

claimed onset date for the alleged disability in this case (Jt.

Statement of Material Facts ("Jt. Statement") at 2).[2]  From

---

[1] "It is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence.  Indeed, the resolution of conflicts in the evidence is for the [Commissioner], not the courts."  Irlanda Ortiz, 955 F.2d at 769 (citations omitted).  Moreover, the court "must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."  Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988).

[2] Zyla worked as a subcontractor/taxicab driver from January through March, 2004, but the Administrative Law Judge who ruled on Zyla's 2003 application found that work not to qualify as

August, 2006, through November 29, 2006, the date of his hearing
before the Administrative Law Judge ("ALJ"), Zyla worked as a
project manager for an HVAC company.  (Tr. at 232.)  The record
is unclear as to whether Zyla engaged in substantial gainful
activity between the end date of his claimed period of disability
(April 13, 2006) and August, 2006, when he began his HVAC work.

    On January 17, 2005, more than twelve months after Zyla's
claimed onset date, he saw Dr. Michael Cooney of the Palm Beach
Orthopaedic Institute, complaining of right shoulder pain, right
knee pain, neck pain, and left arm weakness.  Based upon a
physical examination and x-rays of Zyla's shoulder, neck, and
knees, Dr. Cooney assessed Zyla as having a right rotator-cuff
tear; bilateral knee osteoarthritis, status-post anterior
cruciate ligament reconstruction; and a significant post-surgical
radicular problem from a laminectomy at C5-6 and C6-7.
Subsequent MRIs disclosed multilevel degenerative changes to the
cervical spine, posterior disc bulges at several levels, a right-
of-midline disc herniation at the C4-5 level, marked thinning of
the rotator cuff with a full-thickness tear and degenerative
changes in the acromioclavicular joint without clear impingement
on the subjacent rotator cuff.  After a second examination,

---

substantial gainful activity.  (See Tr. at 22.)  There is also
some suggestion that "in April 2004, the claimant became an
independent contractor after leasing a car."  (Tr. at 21.)

conducted ten days after the first one, Dr. Cooney opined that
Zyla had a complex myriad of orthopaedic problems causing a
significant amount of chronic pain.  More specifically, he
diagnosed Zyla as having a right rotator-cuff tear with
retraction, right C5 cervical radiculopathy secondary to a
herniated nucleus pulposus at C4-5, a fairly complete left C7
nerve injury status-post surgical decompression and cervical
laminectomy, and right knee osteoarthritis status-post anterior
cruciate ligament reconstruction with residual laxity.

Based upon his examinations, Dr. Cooney wrote that Zyla was
not healthy enough to undertake any kind of employment, as he
was, in Cooney's view, completely disabled.  Dr. Cooney
prescribed Percocet and also recommended that Zyla: (1) pursue a
disability claim with the federal government; (2) make
arrangements to be evaluated for chronic pain management; and (3)
return for a follow-up appointment.  There is no evidence in the
record that Zyla arranged for a pain-management evaluation or
returned for a follow-up appointment with Dr. Cooney.

On April 25, 2005, Zyla filed the application for benefits
that gives rise to this case.  On June 29, Zyla was given an
independent medical evaluation by Dr. Alvin Barber, a
consultative physician.  In addition, Physical Functional

Capacity Assessments, based solely on the records, were completed on July 6 and December 12.

Dr. Barber's impression of Zyla was that he suffered from chronic pain in both knees, chronic pain in the right rotator cuff, and chronic pain with radiculopathy in the cervical spine. He further reported that Zyla could be limited in walking and standing for long periods of time due to decreased range of motion in the upper extremities, lower extremities, and back caused by pain and tight muscles; that he could be limited in lifting and carrying heavy objects, crawling, squatting, and kneeling; and that his symptoms could limit him in activities that require the use of upper-body movements and coordinated activities with hands.

According to the first non-examining state-agency physician, Zyla could: lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for about six hours in an eight-hour workday, and sit for about six hours in an eight-hour workday. That physician also opined that claimant had occasional postural limitations, but no other limitations.

According to the second non-examining state-agency physician, Zyla could: lift and/or carry twenty pounds

occasionally and ten pounds frequently, stand and/or walk for about six hours in an eight-hour workday, and sit for about six hours in an eight-hour workday.  That physician also opined that claimant had limitations in his ability to push and/or pull with his upper and lower extremities and had occasional postural limitations, but no other limitations.

After conducting a hearing at which claimant was represented, albeit by a non-attorney, the ALJ issued a decision which included the following findings:

> 3.  The claimant has the following severe impairments: degenerative joint disease of the knees, status-post surgeries; right rotator cuff injury, status-post surgery; cervical spondylosis, status-post surgery; multi-level degenerative disc disease of the lower back; and chronic pain syndrome (20 CFR 404.1520(c)).
>
> . . . .
>
> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> . . . .
>
> 5.  After careful consideration of the entire record, the undersigned finds that from his alleged onset date of January 2004 the claimant has had the residual functional capacity to perform at least a full range of light work.  Light work is defined as work which involves lifting up to 20 pounds at a time, frequently lifting or carrying of object[s] weighing up to 10 pounds, walking or standing of up to six hours in an eight-hour workday, or some pushing and pulling of arm or leg controls (20 CFR 404.1567).

The claimant has the ability to lift and/or carry 10
pounds frequently and 20 pounds occasionally and sit,
stand and/or walk for approximately six hours in an
eight-hour workday with normal breaks.  The claimant
has also had the ability to perform functions that
involve limited pushing and/or pulling with upper and
lower extremities and occasional reaching, climbing,
balancing, and stooping.  The claimant would need to
avoid any activities that involve repetitive overhead
reaching, particularly on the right, and/or any
functions that involve crawling, squatting, and/or
kneeling.

.  .  .  .

6.  The claimant is capable of performing past relevant
work as limousine/taxicab driver.  This work does not
require the performance of work-related activities
precluded by the claimant's residual functional
capacity (20 CFR 404.1565).

.  .  .  .

7.  The claimant has not been under a disability, as
defined in the Social Security Act, from January 1,
2004, through the date of this decision (20 CFR
404.1520(f)).

(Tr. 22-27).

## Discussion

Claimant argues that the ALJ's decision should be reversed,
and the case remanded, because the ALJ: (1) adjudicated a period
of disability beyond the period he claimed at the hearing; (2)
failed to give adequate weight to his treating physician's
opinion and failed to explain why he rejected it; (3) found that
he had a capacity for light work; (4) determined that his
capacity for light work qualified him to perform his past
relevant work as a limousine/taxi driver; and (5) failed to

8

consider his psychiatric impairments and their likely impact on his ability to engage in any substantial gainful activity.

    To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability.  42 U.S.C. §§ 423(a)(1)(A)-(D).  The only question in this case is whether claimant was under a disability during the period for which he seeks benefits.

    For the purpose of determining eligibility for disability insurance benefits,

> [t]he term "disability" means . . . inability to engage
> in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment
> which can be expected to result in death or which has
> lasted or can be expected to last for a continuous
> period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).

    In order to determine whether a claimant is disabled for the purpose of determining eligibility for disability insurance benefits, an ALJ is required to employ a five-step process.  <u>See</u> 20 U.S.C. §§ 404.1520.

> The steps are: 1) if the [claimant] is engaged in
> substantial gainful work activity, the application is

9

denied; 2) if the [claimant] does not have, or has not
had within the relevant time period, a severe
impairment or combination of impairments, the
application is denied; 3) if the impairment meets the
conditions for one of the "listed" impairments in the
Social Security regulations, then the application is
granted; 4) if the [claimant's] "residual functional
capacity" is such that he or she can still perform past
relevant work, then the application is denied; 5) if
the [claimant], given his or her residual functional
capacity, education, work experience, and age, is
unable to do any other work, the application is
granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20

C.F.R. § 416.920, which outlines the same five-step process as

the one prescribed in 20 C.F.R. § 1520).


The claimant bears the burden of proving that he is

disabled.  See Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  He

must do so by a preponderance of the evidence.  See Mandziej v.

Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v.

Schweiker, 530 F. Supp. 808, 810-11) (D. Mass. 1982)).  Finally,

In assessing a disability claim, the [Commissioner]
considers objective and subjective factors, including:
(1) objective medical facts; (2) plaintiff's subjective
claims of pain and disability as supported by the
testimony of the plaintiff or other witness; and (3)
the plaintiff's educational background, age, and work
experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797

F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690 F.2d

5, 6 (1st Cir. 1982)).

A.  The Period of Disability

     Claimant objects, in part, to the ALJ's determination that
he was not under a disability from January 1, 2004, through April
11, 2007.  According to claimant, he sought benefits for a closed
period of disability ending on March 13, 2006, and thus, never
litigated the question of his disability at any time after that
date.  In claimant's view, the ALJ's decision should be vacated
to the extent it includes findings pertaining to the period from
March 14, 2006, through April 11, 2007.  The Commissioner
counters that there is no need to vacate the ALJ's finding that
claimant was not disabled during that period because he returned
to full-time work on March 14, 2006.

     This issue is somewhat puzzling.  Presumably, claimant seeks
to avoid some future application of res judicata.  On the other
hand, if he did, indeed, work full time from March 14, 2006,
through April 11, 2007, it is difficult to see how he could get
past step one of the five-step process.  See Seavey, 276 F.3d at
5 ("if the [claimant] is engaged in substantial gainful work
activity, the application is denied").  But, then again, it is
difficult to see why the Commissioner is opposed to vacating that
portion of the ALJ's finding pertaining to the disputed period.
And, the issue is further complicated by ambiguity in the record
concerning claimant's activity during that period.  While the

Commissioner asserts that claimant "was working full-time after March 13, 2006" (Comm'r's Mem. of Law, at 4), and the ALJ referred to a "return to work activity beginning March 14, 2006" (Tr. at 22), the hearing transcript indicates that claimant began his job as an HVAC project manager in August, 2006, and that he was doing something else up through July, 2006.  What, exactly, he was doing, is unclear, and given the history, in this case, of "work activity [that] did not constitute substantial gainful activity" (Tr. at 22), there is no basis for concluding that claimant's work activity between March 14 and the end of July, 2006, would necessarily preclude a determination that he was disabled during that period.  All things considered, the best course is to vacate the ALJ's decision in part, limiting his factual finding concerning claimant's disability to the closed period of disability that was actually claimed and litigated.

B.  Consideration of the Treating Physician's Opinion

Claimant argues that the ALJ erred by failing to give adequate weight to his treating physician's medical opinion, by failing to explain his rejection of that opinion, and by citing the lack of medical treatment as the reason for his reliance upon the reports of a state-agency medical consultant.[3]  The

---

[3] Claimant mischaracterizes the ALJ's decision.  The ALJ did not "cite[ ] the lack of medical treatment as the catalyst for . . . relying heavily on the State agency medical consultant."

Commissioner counters that: (1) Dr. Cooney does not qualify as a treating physician; (2) the ALJ did consider Dr. Cooney's medical opinions; (3) Dr. Cooney's opinion that claimant was unable to work is not a medical opinion but, rather, an opinion on an issue reserved to the Commissioner; and (4) the ALJ was entitled to consider claimant's lack of treatment as evidence that his symptoms were not as severe as he alleged.

Claimant's principal argument is that the ALJ failed to properly consider the following statement by Dr. Cooney:  "I don't think [claimant] is confident enough or healthy enough to undergo any type of employment at this point."  (Tr. at 164.) Dr. Cooney also stated:  "I believe him to be 100% disabled." (Id.)

---

(Cl.'s Mem. of Law, at 4.)  Rather, the ALJ identified "the absence of regular treating physician records or reports" (Tr. at 26), as the reason for having claimant evaluated by a consultative examiner.  Regarding claimant's lack of treatment, the ALJ considered that as a factor bearing on the credibility of claimant's allegations of disabling pain.  (Id.)

Claimant further argues that the ALJ erred by failing to inquire into the reasons for his lack of medical treatment, averring that had the ALJ done so, "he would have found that [claimant's] lack of treatment was justifiable and would not have used the lack of treatment against him."  (Id.)  Even now, however, claimant does not indicate what justification he would have given the ALJ, and does not indicate why his representative at the hearing was unable to inquire into that matter.

As a general rule, when considering medical opinions, an ALJ should

> give more weight to opinions from . . . treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(d)(2).  Medical opinions from treating sources may even be given controlling weight.  See id.  Moreover, an ALJ is obligated "always [to] give good reasons in [his] . . . decision for the weight [he] gives [a claimant's] treating source's opinion."  Id.

The term "medical opinions" refers to "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."  20 C.F.R. § 404.1527(a)(2).  But, the category of "medical opinions" does not include a medical source's statement that a claimant is "disabled" or "unable to work."  See 20 C.F.R. § 404.1527(e)(1).  Rather, such a statement addresses an issue

14

reserved to the Commissioner, and the ALJ need "not give any special significance" to it.  <u>See</u> 20 C.F.R. § 404.1527(e)(3).

Here, the statement by Dr. Cooney on which claimant relies is not a medical opinion; it is a statement about an issue reserved to the Commissioner.  Thus, the ALJ was not obligated to give it any weight, or explain the reasons for giving it the weight he did.  <u>See</u> <u>Arroyo v. Sec'y of HHS</u>, 932 F.2d 82, 89 (1st Cir. 1991) ("The ALJ was not required to accept the conclusions of claimant's treating physicians on the ultimate issue of disability.")  And, as the Commissioner correctly observes, the ALJ <u>did</u> consider the <u>medical</u> opinions offered by Dr. Cooney.  Dr. Cooney's assessment of claimant's physical condition is fully and accurately described in the ALJ's decision (<u>see</u> Tr. at 23), and the ALJ's findings concerning claimant's impairments appear to be consistent with Dr. Cooney's medical assessment (<u>see</u> <u>id.</u> at 22–23).

In sum, the ALJ committed no error in his consideration of Dr. Cooney's medical opinions and other statements.

<u>C.  Capacity for Light Work</u>

Claimant argues that the ALJ erroneously found that he had a residual functional capacity ("RFC") to perform light work

because the ALJ: (1) disregarded Dr. Cooney's opinion that he was totally disabled; (2) relied on Dr. Barber's report, which did not give him a work capacity of any type; (3) relied on opinions of non-examining physicians that are not supported by his treatment records; and (4) failed to adequately develop the record on the issue of his credibility.  The Commissioner counters that his RFC determination was supported by substantial evidence, and that he properly considered claimant's credibility.

As explained above, the ALJ committed no error in his consideration of Dr. Cooney's statement that claimant was totally disabled.  Moreover, given the ALJ's obligation to consider all the evidence in the record when determining claimant's RFC, see 20 C.F.R. 404.1545(a)(1), (3), it is difficult to see how he could be faulted for considering Dr. Barber's report in reaching his conclusion on claimant's RFC.[4]  Regarding the ALJ's reliance on the opinions of the non-examining physicians, claimant is factually incorrect when he asserts that those physicians ignored Dr. Cooney's opinion; the July 6, 2005, RFC assessment expressly mentioned claimant's office visit with Dr. Cooney.  (See Tr. at 183.)

---

[4] Claimant offers no legal support for his argument that "[a]ny reliance on Dr. Barber's report for the proposition that Mr. Zyla had a light work capacity is erroneous and unfounded." (Cl.'s Mem. of Law, at 5.)

16

Further, while claimant argues that the opinions presented
in the RFC assessments are not supported by his treatment
records, it is not at all clear that Dr. Cooney's notes qualify
as "treatment records," given that Dr. Cooney's "treatment"
consisted of two physical examinations, performed ten days apart,
a set of x-rays, a set of MRIs, and a set of recommendations with
no documented follow-up.  That is, Dr. Cooney's "treatment
relationship" with claimant is more like an individual
examination than a relationship that could "provide a detailed,
longitudinal picture of [claimant's] medical impairments" and
"bring a unique perspective to the medical evidence that cannot
be obtained from the objective medical findings alone or from
reports of individual examinations . . ."  20 C.F.R. §1526(d)(2).
Moreover, claimant does not identify any aspect of Dr. Cooney's
"treatment records" that does not support the RFC determination
other than his statement about total disability.  But, again,
that statement is entitled to no weight.

Claimant's argument concerning the ALJ's credibility
determination is also unavailing.  According to claimant, the ALJ
failed to properly develop the record on his credibility.
Claimant is mistaken.

According to Social Security Ruling ("SSR") 96-7p, 1996 WL 374186 (S.S.A.), "an individual's statement(s) about his or her symptoms[5] is not in itself enough to establish the existence of a physical or mental impairment or that the individual is disabled."  <u>Id.</u> at *2.  When "symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness," <u>id.</u>, are alleged, SSR 96-7p prescribes a two-step evaluation process:

> * First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s) – i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques – that could reasonably be expected to produce the individual's pain or other symptoms. . . .  If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.
> * Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities.  For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

---

[5] "A symptom is an individual's own description of his or her physical or mental impairment(s)."  SSR 96-7p, 1996 WL 374186, at *2.

Id.  In addition:

>    When additional information is needed to assess
> the credibility of the individual's statements about
> symptoms and their effects, the adjudicator must make
> every reasonable effort to obtain available information
> that could shed light on the credibility of the
> individual's statements.  In recognition of the fact
> that an individual's symptoms can sometimes suggest a
> greater level of severity of impairment than can be
> shown by the objective medical evidence alone, 20 CFR
> 404.1529(c) and 416.929(c) describe the kinds of
> evidence, including the factors below, that the
> adjudicator must consider in addition to the objective
> medical evidence when assessing the credibility of an
> individual's statements:
>
>> 1. The individual's daily activities;
>>
>> 2. The location, duration, frequency, and
>> intensity of the individual's pain or other
>> symptoms;
>>
>> 3. Factors that precipitate and aggravate the
>> symptoms;
>>
>> 4. The type, dosage, effectiveness, and side
>> effects of any medication the individual takes or
>> has taken to alleviate pain or other symptoms;
>>
>> 5. Treatment, other than medication, the
>> individual receives or has received for relief of
>> pain or other symptoms;
>>
>> 6. Any measures other than treatment the
>> individual uses or has used to relieve pain or
>> other symptoms (e.g., lying flat on his or her
>> back, standing for 15 to 20 minutes every hour, or
>> sleeping on a board); and
>>
>> 7. Any other factors concerning the individual's
>> functional limitations and restrictions due to
>> pain or other symptoms.

Id. at *3.

Here, it is evident from the ALJ's decision that he followed the two-step process set out in SSR 96-7p, and considered the seven factors described therein.  Claimant – who was represented at the hearing – criticizes the ALJ for failing to pose questions concerning the SSR 96-7p factors during the hearing.  But the decision demonstrates that the ALJ used claimant's written statements to make findings on many of those factors.  Moreover, claimant does not say what testimony he would have offered if the ALJ had questioned him on the SSR 96-7p factors.  See Born v. Sec'y of HHS, 923 F.2d 1168, 1172 (6th Cir. 1990) (noting, in decision affirming determination of non-disability over argument that ALJ failed to properly develop the record, that "claimant . . . failed to suggest what other information could have been brought forth by further questioning of him which would have enhanced a determination of disability").  Finally, while claimant criticizes the ALJ for conducting a hearing that lasted only eleven minutes, the ALJ concluded the hearing by asking claimant whether he had anything else to add to the record, and his representative responded:  "Nothing else, Your Honor."  In other words, claimant himself, through his representative, had the opportunity to provide the ALJ with the (unidentified) information he claims the ALJ failed to elicit, but he did not do so.  Accordingly, claimant's argument that the ALJ failed to properly develop the record is not persuasive.

20

Because the ALJ's finding that claimant had the residual functional capacity to perform light work is supported by substantial evidence, in the form of the two RFC assessments, it must stand as conclusive.  See 42 U.S.C. § 405(g).

D.  Capacity to Perform Past Relevant Work

Claimant argues that once the ALJ found him capable of performing light work, the ALJ erred by finding that he had the residual functional capacity to perform his past relevant work as a limousine driver because that job is classified as medium exertional job in the Dictionary of Occupational Titles.  He also contends that the ALJ failed to follow the mandate of SSR 82-62 and fully develop the record concerning the physical and mental demands of his past work as a limousine driver.  According to claimant:  "If the ALJ had addressed these issues he would have noted that the past relevant work requires medium exertion as stated in the Dictionary of Occupational Titles.  Had the ALJ noted that Mr. Zyla's past relevant work is classified as medium exertion the ALJ would have found Mr. Zyla disabled."[6]  (Cl.'s Mem. of Law, at 8.)  The Commissioner counters that claimant failed to carry his burden of showing how his functional

---

[6] If the ALJ had found claimant unable to perform his past relevant work, he would not have found claimant disabled; he would have gone on to determine whether claimant was able to do any other work.  See Seavey, 276 F.3d at 5.

limitations rendered him incapable of performing his past relevant work, because his own description of limousine driving, as he performed it, demonstrates his ability to perform that job.

At step four of the five-step process, claimant had the burden of showing that he was unable to do his past relevant work.  See Seavey, 276 F.3d at 5.  Moreover, "[t]he claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands, and non-exertional demands of such work."  Santiago v. Sec'y of HHS, 944 F.2d 1, 5 (1st Cir. 1991).  Here, the record before the ALJ included information from claimant himself indicating that when he worked as a limousine driver, the heaviest weight he lifted was less than ten pounds, and the amount he frequently lifted was less than ten pounds.  (Tr. at 88.)  He also indicated that he did no walking, standing, climbing, stooping, kneeling, crouching, crawling, handling of big objects, reaching or writing.  (Id.)  While the DOT classifies limousine driving as medium work, the ALJ had better evidence before him, see Santiago, 944 F.2d at 5, claimant's own characterization of limousine driving, as he performed that job.  Given the ALJ's properly supported finding that claimant was capable of light work, and claimant's own characterization of limousine driving as

22

light work, there was substantial evidence before the ALJ that
claimant was capable of performing his former job as he actually
performed it, and thus, was not disabled.  <u>See</u> <u>Santiago</u>, 944 F.2d
at 5.  Because the ALJ's finding is supported by substantial
evidence, it must stand as conclusive.  <u>See</u> 42 U.S.C. § 405(g).

E.  <u>Consideration of Claimant's Psychiatric Conditions</u>

Finally, claimant argues that the ALJ ignored his long
history of treatment for depression, and failed to properly
evaluate the limitations imposed on his ability to work by his
psychiatric condition.  The Commissioner counters that the ALJ
properly considered claimant's mental impairment and found it not
to be severe.

Zyla received mental-health treatment from the Mental Health
Center of Greater Manchester from April 1, 2003, through January
2, 2004, the day after the onset date of the period of disability
he now claims.  He was treated for major depressive disorder,
single episode, moderate; opioid abuse; and alcohol dependence in
sustained partial remission.  On January 2, Zyla's mental-health-
care provider noted:  "Nick states he is doing fairly well –
feels that stopping all psychotropics has been [positive] – feels
more energy, return of sex drive.  He is working many hours/week
for Limo Co – airport service."  (Tr. at 100.)  The provider

23

further noted:  "He desires to resume counseling, about monthly, he states.  Does not wish to resume medications."[7]  (Id.)  The record includes no evidence of any mental-health treatment after January 2, 2004.

On July 1, 2005, Zyla received a "general clinical evaluation with mental status" from Dr. Malcolm J. Graham, III, a clinical psychologist.  Regarding Zyla's functional ability, Dr. Graham reported:  "During his evaluation, there were no problems noted in his attention or concentration or in his recent or remote memory.  There are no behavior[al] indications of anxiety, depression or thought disorder."  (Tr. at 180.)  The record also includes psychiatric review technique forms completed by non-examining psychologists on July 19, and November 9, 2005.  With regard to Zyla's functional limitations, both psychologists reported mild restrictions of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation of extended duration.  (Tr. at 160, 200.)

---

[7] Claimant also reported that "he [was] not taking any pain meds, either."  (Tr. at 100.)

Based upon the reports of Dr. Graham and the two non-examining psychologists, the ALJ found that "[t]he claimant's psychiatric impairment . . . does not significantly limit the claimant's ability to perform basic work activities and, therefore, is considered not 'severe.'"  (Tr. at 24.)  The ALJ's findings are supported by substantial evidence, and are based upon a correct application of 20 C.F.R. § 404.1520a(d)(1).  While the record contains considerable documentation of claimant's mental-health treatment in 2003, that information was not relevant to the question before the ALJ, which was claimant's functional capacity during his claimed period of disability, which began one day after claimant's last documented contact with a mental-health-care provider.  Accordingly, claimant's observation that the ALJ failed to consider any records of his pre-onset mental-health treatment is not significant.  The ALJ did acknowledge claimant's 2003 diagnosis and treatment in his decision. (See Tr. at 10.)  To restate, the ALJ's finding that claimant's psychiatric impairment did not significantly limit his ability to perform basic work activities is supported by substantial evidence, and must, therefore, stand as conclusive. See 42 U.S.C. § 405(g).

**Conclusion**

For the reasons given, claimant's motion to reverse and remand (document no. 15) is denied, and the Commissioner's motion for an order affirming the ALJ's decision (document no. 16) is granted.  The clerk of the court shall enter judgment in accordance with this order and close the case.


**SO ORDERED.**


_____
Steven J. McAuliffe
Chief Judge

April 6, 2009

cc:  Maureen R. Manning, Esq.
     Gretchen L. Witt, Esq.